NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 19-908


STATE IN THE INTEREST OF

R. C.


\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2017879
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


AFFIRMED.

Lloyd Dangerfield
Attorney at Law
100 Beauvais Avenue, Suite B2
Lafayette, LA 70509-1908
(337) 232-7041
COUNSEL FOR APPELLANT:
      S. M. C. (father)

Chantel Conrad
825 Kaliste Saloom Road
Brandywine III, Suite 150
Lafayette, LA 70508
(337) 262-2250
COUNSEL FOR APPELLEE:
      Department of Children and Family Services

**PICKETT, Judge.**

## APPEAL

S.M.C.[1] appeals the judgment of the trial court terminating his parental rights to his daughter, R.C.

## FACTS

R.C. was born on September 24, 2017. By October 27, 2017, the Department of Children and Family Services (DCFS) had applied for and received approval for an Instanter Safety Plan Order because the child's urine tested positive for cocaine and barbiturates. The mother, D.G., and the father, S.M.C., both admitted to the use of illegal drugs. The child was placed in the home of S.M.C.'s sister and niece, where she has remained throughout the pendency of this litigation.

On December 15, 2017, DCFS took custody of R.C. pursuant to an Instanter Order. On January 24, 2018, R.C. was adjudicated a child in need of care and was placed in the custody of the state. DCFS took this step because the mother continued to use drugs, and the father would not submit to substance abuse treatment. DCFS created a case plan which included mental health assessments, requirements for stable and adequate housing, visitation with R.C., substance abuse treatment, random drug screens, a parenting class, and support of $5 per month. The case plan was approved by the court on March 14, 2018, and the court ordered a review in two months. The goal was reunification with the parents. At the time, S.M.C. and D.G. lived together. By the time the next case plan was prepared in April, D.G. was no longer living with S.M.C. The court approved that case plan on May 8, 2018 and set the next review hearing for six months. At the November 13, 2018 hearing, the trial court approved a case plan that included the same requirements but changed the

---

[1] The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding pursuant to Uniform Rules – Courts of Appeal, Rule 5-2.

goal to adoption. With respect to S.M.C., DCFS noted that he was living with D.G. at the time. He claimed that he was employed but provided no documentation of employment. He failed to follow-up for assessment of substance abuse treatment. S.M.C. attended all parenting classes except for one, but he failed to get a certificate of completion.

In January 2019, DCFS sought and received an injunction prohibiting S.M.C. from having contact with DCFS because he threatened his case worker, Jeremy Daye, with death and bodily harm during a visit. Thereafter, S.M.C.'s visits with R.C. ceased.

On March 11, 2019, DCFS filed a Petition for Termination of Parental Rights against D.G. and S.M.C. based on La.Ch.Code art. 1015(5) and 1015(6). Specifically, the state alleged that D.G. and S.M.C. abandoned R.C. by failing to pay support for at least six months (La.Ch. Code art. 1015(5)(b)) and that over one year had elapsed since R.C. entered state custody and the parents have failed to substantially comply with the case plan with no reasonable expectation of substantial improvement. The trial court heard the matter on September 9, 2019. S.M.C testified at the hearing that he was unemployed and homeless at that time, though he had prospects for a job and housing beginning in October. The trial court found that DCFS met its burden of proving that the parental rights of D.G. and S.M.C. should be terminated. S.M.C. perfected this appeal. The termination of D.G.'s parental rights are not an issue in this appeal.

## ASSIGNMENT OF ERROR

On appeal, S.M.C. assigns one error:

1. The trial court erred in terminating the rights of S.M.C. for substantial non-compliance when he had housing previously, employment previously and in the future, adhered to drug screens and had visited with the child.

## DISCUSSION

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.
>
> . . . .
>
> . . . . In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

The trial court found that DCFS proved by clear and convincing evidence the grounds for termination of La.Ch.Code art. 1015(6). Louisiana Children's Code Article 1015 states, in pertinent part:

> The grounds for termination of parental rights are:
>
> . . . .
>
> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable

expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036 states, in pertinent part:

C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

. . . .

D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

4

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

S.M.C.'s case plan, as approved by the trial court on five separate occasions, included requirements that he maintain stable housing. He was required to provide proof of employment. He was required to make parental contributions of $5 each month to DCFS. He had to submit to random drug screens. He had to attend regular visits with the R.C. He was also required to undergo a substance abuse assessment and a mental health assessment and comply with any recommendations made as a result of these assessments. Finally, S.M.C. was required to attend a parenting class and demonstrate an ability to parent his child.

At the trial, Mr. Daye testified that S.M.C had suitable housing at least until January 2019, at which point the restraining order against S.M.C. was issued and Mr. Daye no longer made home visits. S.M.C. admitted he had no housing at the time of the trial.

Mr. Daye also testified that S.M.C. never provided proof of employment. He failed to maintain contact with the agency even before the restraining order was put into effect. S.M.C claimed to have attended a mental health assessment while he was incarcerated, but the agency has no records of that assessment. Mr. Daye testified that S.M.C. was referred to a clinic for mental health assessment and substance abuse assessment, but when contacted they had no record of S.M.C. attending the facility. S.M.C. failed to show for two drug screens.

S.M.C. was ordered to attend domestic violence training because of concerns about his relationship with D.G. S.M.C. did not comply with that component of his case plan. S.M.C. was required to attend parenting classes. Mr. Daye testified that he did not complete the course. S.M.C. claims he attended all but one class, and he

5

was excused from that class, but he provided no proof for that assertion. S.M.C. did regularly attend visitation until he was disallowed from the DCFS facility. Mr. Daye testified that several times during visitation S.M.C. and D.G. would argue in front of the child. Mr. Daye testified that S.M.C. was given the information for Avec Les Enfants, where he could set up visitation with R.C. after the restraining order was issued, but no visits ever occurred at that facility. S.M.C. testified that he never received notice of the visits at Avec Les Enfants.

S.M.C. testified that he intended to have a job in early October, and he and D.G. would move out of state. D.G. testified that she does not plan to move out of state with S.M.C. and separate R.C. from her foster mother.

R.C. is currently placed in an adoptive resource home. The foster mother intends to adopt R.C. if the parents' rights are terminated. She has been in the same home since she was two-months old. Her foster family provides for her needs and R.C. is a healthy two-year-old child.

Given the totality of the evidence, we cannot say the trial court's findings of fact are manifestly erroneous. DCFS proved that S.M.C. failed to substantially comply with his case plan, and that the child was in the custody for the state for over one year. Further, DCFS proved that termination of S.M.C.'s parental rights are in the best interest of R.C.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to S.M.C.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.